IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMO TECHNOLOGIES LIMITED, VALEANT PHARMACEUTICALS INTERNATIONAL, and VALEANT PHARMACEUTICALS LUXEMBOURG S.À R.L., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 15-116 (LPS) |
| v. | ) ) | |
| PAR PHARMACEUTICAL, INC., | ) ) ) | |
| Defendant. | ) | |
| COSMO TECHNOLOGIES LIMITED, VALEANT PHARMACEUTICALS INTERNATIONAL, and VALEANT PHARMACEUTICALS LUXEMBOURG S.À R.L., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 15-164 (LPS) |
| v. | ) ) | |
| ACTAVIS LABORATORIES FL, INC., | ) ) ) | |
| Defendant. | ) | |
| COSMO TECHNOLOGIES LIMITED, VALEANT PHARMACEUTICALS INTERNATIONAL, and VALEANT PHARMACEUTICALS LUXEMBOURG S.À R.L., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 15-193 (LPS) |
| v. | ) ) | |
| ALVOGEN PINE BROOK, LLC, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' SUPPLEMENTAL OPENING CLAIM CONSTRUCTION BRIEF
CONCERNING U.S. PATENT NO. 9,320,716**

| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| --- | --- |
| | Jack B. Blumenfeld (#1014) |
| | Maryellen Noreika (#3208) |
| | 1201 North Market Street |
| | P.O. Box 1347 |
| | Wilmington, DE 19899 |
| OF COUNSEL: | (302) 658-9200 |
| | jblumenfeld@mnat.com |
| Bruce M. Wexler | mnoreika@mnat.com |
| Melanie R. Rupert | |
| David M. Conca | *Attorneys for Plaintiffs* |
| Nicholas A. Tymoczko | |
| PAUL HASTINGS LLP | |
| 200 Park Avenue | |
| New York, NY 10166 | |
| (212) 318-6000 | |
| | |
| June 20, 2016 | |

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| III. | THE DISPUTED CLAIM TERMS | 3 |
|   | A. "macroscopically homogenous structure" (claims 1, 12, 22, 24-26) | 3 |
|   | B. "lipophilic compound" (claims 1, 9, 10, 19, 20, 22) | 6 |
| IV. | CONCLUSION | 7 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .................................................................7

I.   **INTRODUCTION**

This supplemental claim construction briefing concerns two terms that Defendants have identified for construction from U.S. Patent No. 9,320,716 ("the '716 patent") – "macroscopically homogenous structure" and "lipophilic compound." Despite the fact that the parties agreed that this supplemental briefing would be limited to terms "which have not previously been proposed for construction in prior claim construction briefing,"[1] Defendants have proposed constructions that track their constructions of two other previously-briefed terms, "macroscopically homogeneous composition" and "lipophilic matrix." The parties' disputes also appear to mirror previously-briefed issues. In view of this, Plaintiffs sought agreement that no further briefing would be submitted, but Defendants refused. Plaintiffs submit that Defendants' effort at more briefing on the previously proposed constructions fails to provide any further support for their positions. For the reasons discussed in the prior briefing and below, Plaintiffs' constructions should be adopted, and Defendants' constructions should be rejected.

With respect to the term "macroscopically homogenous structure," Plaintiffs' construction reflects the plain meaning of the constituent terms ("macroscopically" and "homogenous") and is further supported by the prosecution history, which shows that a "special" meaning was not adopted by the patentees. Defendants' construction, by contrast, is a flawed attempt to rewrite clear claim language, add erroneous and redundant limitations, and render the claims confusing based on a single statement that does not amount to "lexicography." With respect to the term "lipophilic compound," Plaintiffs' construction follows directly from the '716 patent's characterization of "lipophilia" and "lipophilic compounds" as having a poor affinity towards or lacking an affinity for aqueous fluids. Defendants' construction, by contrast, is divorced from the

---

[1]   *See, e.g.*, D.I. 115 at 3-4. All D.I. citations in this brief are to the docket entries from C.A. No. 15-116-LPS (D. Del.).

intrinsic record. For at least these reasons, and as explained in more detail below and in Plaintiffs' Opening and Answering Claim Construction Briefs (D.I. 66 ["Pl. Op. Br."] & D.I. 75 ["Pl. Ans. Br."]), Plaintiffs respectfully request that the Court adopt their proposed constructions.

## II. BACKGROUND

The '716 patent issued on April 26, 2016 and was added to these cases on May 10, 2016, as part of the infringement allegations in Plaintiffs' Second Amended Complaints. The '716 patent is a continuation of the previously-asserted '888 patent. And like the other asserted patents, the '716 patent is directed to controlled-release budesonide formulations that operate through their unique use of excipients and types of excipients combined in specified ways, as explained by the Abstract:

> The invention relates to an oral pharmaceutical composition comprising an active agent, a macroscopically homogeneous structure and a gastro-resistant coating. The macroscopically homogeneous structure comprises at least one hydrophilic compound and at least one lipophilic compound and/or at least one amphiphilic compound. The macroscopically homogeneous structure controls the release of the active ingredient, and the gastro-resistant film prevents release of the active agent in the stomach.

Like its parent the '888 patent, the '716 patent does not claim a matrix or matrices in enumerating the elements of the claimed novel formulations. Instead, the '716 patent requires a "macroscopically homogenous structure" containing particular types of compounds, as exemplified by claim 22:

22. A controlled release oral pharmaceutical composition comprising:

(i) budesonide in an amount effective to treat intestinal inflammatory disease;

(ii) a ***macroscopically homogenous structure*** comprising:

(a) budesonide;

(b) at least one amphiphilic compound;

(c) at least one lipophilic compound; and

(d) at least one hydrophilic compound,

wherein the macroscopically homogenous structure controls the release of the budesonide; and

(iii) a gastro-resistant coating on the macroscopically homogenous structure that prevents release of budesonide in the stomach,

wherein the macroscopically homogenous structure is a tablet.[2]

As with the specifications of the other asserted patents, the specification of the '716 patent describes embodiments of the invention in various ways. Many of these descriptions do not require "granules" or "lipophilic granules" (*see, e.g.*, Ex. 1, '716 patent, Abstract; 3:6-41),[3] and others mention "granules" (*id.* at Example 2, which describes granules made with a number of excipients, including amphiphilic and lipophilic excipients).[4]

## III. THE DISPUTED CLAIM TERMS

### A. "macroscopically homogenous structure" (claims 1, 12, 22, 24-26)

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| "a structure that is uniform throughout, as observed by the naked eye" | "a matrix containing a dispersion of lipophilic granules containing active ingredient, in a hydrophilic matrix" |

As can be seen, the Defendants are not trying to define or clarify the words "macroscopically homogenous" and they are rewriting the more generic word "structure" into a "matrix." Their effort to redraft the term "macroscopically homogenous structure," as recited in the claims of the '716 patent, appears to track how Defendants tried to redraft the term "macroscopically homogeneous composition" as recited in the claims of the '888 and '064 patents. For that term, the parties had proposed the following constructions:

---

[2] Unless otherwise indicated, all emphasis has been added, and all internal citations and quotations have been omitted.

[3] "Ex. __" refers to the exhibits attached to this brief (*i.e.*, Exhibit Nos. 1-4).

[4] The specification of the '716 patent is the same as or overlaps with the specifications of the other asserted patents.

| **Plaintiffs' Construction** | **Defendants' Construction** |
|---|---|
| "a composition of uniform structure throughout, as observed by the naked eye" | "a matrix containing a dispersion of lipophilic granules containing active ingredient, in a hydrophilic matrix." |

Plaintiffs' proposed construction for "macroscopically homogenous structure" should be adopted here, for at least the same reasons set forth in their Opening and Answering Claim Construction Briefs. *See* Pl. Op. Br. at 18-20; Pl. Ans. Br. at 14-17. In both cases, Plaintiffs' proposed construction is consistent with the plain and ordinary meaning of the constituent terms of the phrase that has been identified for construction, as well as the intrinsic evidence. As explained in more detail in Plaintiffs' previously-submitted briefing (Pl. Op. Br. at 18-20), the term "homogenous" would be understood by a person of skill in the art in accordance with its ordinary meaning of uniform structure or composition, and the term "macroscopic" would be understood as large scale or considered in terms of large units, as would be observed by the naked eye. Plaintiffs' construction reflects not just the plain meaning of these terms, but also how the inventors characterized their invention and the disclosed embodiments thereof. *See* Pl. Op. Br. at 18-20; Pl. Ans. Br. at 14-17.

The prosecution history of the '716 patent also confirms that the patentees did not assign a special, non-standard meaning to the term "macroscopically homogenous structure." For example, in comparing the claims of the application for the '716 patent with certain other patents cited during prosecution, the U.S. Patent & Trademark Office ("PTO") treated the term "macroscopically homogenous structure" as having its ordinary meaning – never once suggesting that this term required "lipophilic granules containing active ingredient," "a hydrophilic matrix," or a separate matrix containing the granules and matrix. *See* Ex. 2, Appl. No. 14/308,279, July 8, 2015 Office Action, at 7-8; Ex. 3, Appl. No. 14/308,279, Dec. 11, 2015 Office Action, at 7-10.

Instead, the PTO focused on the type of compounds/excipients claimed. *Id.* Likewise, the patentees focused on the fact the claimed compounds must be part of a macroscopically homogenous composition and did not mention matrices or granules, which are not part of the claims. *See* Ex. 4, Appl. No. 14/308,279, Oct 8, 2015 Amendment and Response to Office Action, at 9-10 (distinguishing alleged prior art on the basis that those references "lack[ed] disclosure of an enteric coating of the tablet, characterization of the tablet structure, or a controlled release of budesonide in the form of a macroscopically homogenous structure" and did "not teach or suggest the use of lipophilic compounds in a macroscopically homogenous structure").

By contrast, Defendants have proposed the same flawed construction, which they have called "lexicographical," they proposed in the prior round of claim construction briefing. *See, e.g.*, D.I. 71, Defendants' Opening Claim Construction Brief ("Def. Op. Br.") at 16. Defendants' proposed construction – both then and now – seeks to lessen the clarity of the claim language as written, read in numerous erroneous limitations, make many of the claim elements redundant, and contravene the specification and prosecution history. Unlike Defendants' proposed construction, Plaintiffs' proposed construction does not seek to add limitations or take away from the clarity of the claim language. Because Plaintiffs' construction is supported by the plain meaning of the claim terms and the intrinsic record, and because it accurately reflects without improperly limiting the patentees' invention, it should be adopted.

B.   **"lipophilic compound"** (claims 1, 9, 10, 19, 20, 22)

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| "a compound with a poor affinity towards aqueous fluids" | "a compound having an affinity for lipids" |

The parties appear to agree that the word "lipophilic" modifies the word "compound," which does not itself require construction. Accordingly, the only dispute appears to be the meaning of the term "lipophilic." The meaning of "lipophilic" was addressed in the parties' prior claim construction briefing in the context of the term "lipophilic matrix," where the following constructions were proposed:

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| "a matrix *with a poor affinity towards aqueous fluids*" | "a matrix with the overall property of *having an affinity for lipids*" |

Accordingly, Plaintiffs believe that further briefing is not only unnecessary, but also inappropriate under the Stipulation and Order governing claim construction for the '716 patent. *See* D.I. 115 at 3-4. Nevertheless, in addition to the arguments already advanced with respect to the meaning of "lipophilic," Plaintiffs note that their proposed construction is supported by the intrinsic record with respect to the '716 patent.

As Plaintiffs made clear in their earlier briefing with respect to the term "lipophilic," the specification of the '716 patent consistently equates lipophilia with a "poor affinity towards aqueous fluids." *See* Ex. 1, '716 patent, 1:50-54 ("[T]he main component of the matrix structure opposes some resistance to the penetration of the solvent due to *the poor affinity towards aqueous fluids; such property being known as lipophilia.*"); *id.* at 3:2-4 ("[T]he amphiphilic layer compensate[s for] *the lack of affinity of the aqueous solvent with the lipophilic*

*compounds* forming the inner inert matrix."). Accordingly, a lipophilic compound (*i.e.*, a compound exhibiting lipophilia) is a compound with a poor affinity towards aqueous fluids.[5]

By contrast, not once does the specification describe lipophilia or lipophilic compound(s) with reference to an "affinity for lipids" – underscoring the flaws in Defendants' proposed construction. Tellingly, Defendants did not cite any intrinsic evidence to support their position for the construction of "lipophilic" in the two rounds of claim construction briefing concerning the other patents-in-suit. Instead, Defendants sought to rely solely on extrinsic evidence, namely a declaration by their retained expert and various excerpts of some dictionary definitions. *See* Def. Op. Br. at 13-14; Def. Res. Br. at 9-11. For this reason alone, their construction should be rejected. *E.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (*en banc*) ("We have viewed extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms . . . ."). Moreover, Defendants have not shown how, as a practical matter, the description of lipophilia found in the '716 patent (and the other asserted patents) is at odds with the plain and ordinary meaning of this term, let alone their proposed extrinsic evidence-derived construction. As such, the construction drawn from the intrinsic evidence (Plaintiffs' proposed construction) should be adopted.

## IV. CONCLUSION

For the foregoing reasons, in addition to those set forth in Plaintiffs' Opening and Answering Claim Construction Briefs, Plaintiffs respectfully request that the Court adopt their proposed constructions of these two disputed claim terms.

---

[5] As is clear from the specification, and contrary to Defendants' assertions (*see* Def. Op. Br. at 13-14; D.I. 80, Defendants' Responsive Claim Construction Br. ["Def. Res. Br."] at 9-11), these statements describe the property of lipophilia, which can apply to compounds or matrices, and are not a definition of "inert matrices."

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | */s/ Maryellen Noreika* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014)<br>Maryellen Noreika (#3208)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>mnoreika@mnat.com |
| Bruce M. Wexler<br>Melanie R. Rupert<br>David M. Conca<br>Nicholas A. Tymoczko<br>PAUL HASTINGS LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 318-6000 | *Attorneys for Plaintiffs* |
| June 20, 2016 | |

# CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 20, 2016, upon the following in the manner indicated:

| | |
|---|---|
| Karen L. Pascale, Esquire<br>James L. Higgins, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Par Pharmaceutical, Inc.* | *VIA ELECTRONIC MAIL* |
| Richard J. Berman, Esquire<br>Janine A. Carlan, Esquire<br>Taniel E. Anderson, Esquire<br>Ahmed Abdel-Rahman, Esquire<br>ARENT FOX LLP<br>1717 K Street, NW<br>Washington, DC 20036-5342<br>*Attorneys for Par Pharmaceutical, Inc.* | *VIA ELECTRONIC MAIL* |
| John C. Phillips, Jr., Esquire<br>David A. Bilson, Esquire<br>PHILLIPS, GOLDMAN & SPENCE, P.A.<br>1200 North Broom Street<br>Wilmington, DE 19806<br>*Attorneys for Actavis Laboratories FL, Inc.* | *VIA ELECTRONIC MAIL* |
| Elizabeth J. Holland, Esquire<br>Natasha E. Daughtrey, Esquire<br>Naomi L. Birbach, Esquire<br>GOODWIN PROCTER LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>*Attorneys for Actavis Laboratories FL, Inc.* | *VIA ELECTRONIC MAIL* |

John T. Bennett, Esquire                                    *VIA ELECTRONIC MAIL*
GOODWIN PROCTER LLP
Exchange Place
55 State Street
Boston, MA  02109
*Attorneys for Actavis Laboratories FL, Inc.*

Karen E. Keller, Esquire                                    *VIA ELECTRONIC MAIL*
Jeffrey T. Castellano, Esquire
David M. Fry, Esquire
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE  19801
*Attorneys for Alvogen Pinebrook, LLC*

Matthew J. Becker, Esquire                                  *VIA ELECTRONIC MAIL*
Jason T. Murata, Esquire
Stacie L. Ropka, Esquire
AXINN, VELTROP & HARKRIDER LLP
9 State House Square
Hartford, CT  06103
*Attorneys for Alvogen Pinebrook, LLC*

Delphine W. Knight Brown, Esquire                           *VIA ELECTRONIC MAIL*
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY  10036
*Attorneys for Alvogen Pinebrook, LLC*

Brett Garrision, Esquire                                    *VIA ELECTRONIC MAIL*
AXINN, VELTROP & HARKRIDER LLP
950 F Street NW
Washington, DC  20004
*Attorneys for Alvogen Pinebrook, LLC*


                                                            */s/ Maryellen Noreika*

                                                            Maryellen Noreika (#3208)